**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Michael Scimeca, Derivatively and on behalf of Nominal Defendant, Amkor Technology, Inc.,<br><br>          Plaintiff,<br><br>     v.<br><br>James J. Kim, et al.<br><br>          Defendants,<br><br>     and<br><br>Amkor Technology, Inc.,<br><br>          Nominal Defendant. | No. CV 06-0562-PHX-PGR<br><br><u>ORDER</u> |

On June 5, 2007, the Court heard oral argument on the Individual Defendants' and the Nominal Defendant's Motions to Dismiss for failure to make a pre-suit litigation demand. Having considered the arguments of the parties and the papers submitted, the Court now issues the following ruling.

**I.   INTRODUCTION**

In this shareholder derivative action, the Individual Defendants and Nominal Defendant move to dismiss Plaintiff's Verified Third Amended Shareholder Derivative Complaint ("Complaint"). This action was brought by the Plaintiff on behalf of Amkor Technology Inc. ("Amkor") against certain current or former officers and directors of the

corporation. The Plaintiff seeks to remedy the Defendants' alleged violations of various state and federal laws, including violations of the Sarbanes-Oxley Act of 2002, violations of Section 14(a) of the Securities Exchange Act of 1934, breaches of fiduciary duties, abuse of control, gross mismanagement, waste of corporate assets, unjust enrichment and negligence, that have caused substantial losses to the Company. On behalf of Amkor, the derivative Complaint seeks damages, corporate governance reforms, an accounting, rescission and the declaration of a constructive trust to remedy the Defendants' alleged violations of state law.

## II.     BACKGROUND

Nominal Defendant Amkor is a Delaware corporation with its principal place of business and headquarters located in Chandler, Arizona. Amkor is one of the world's largest subcontractors of semiconductor packaging and test services. The semiconductors that Amkor packages and tests ultimately become components in electronic systems used in communications, computing, consumer, industrial and automotive applications. At the time the Plaintiff filed this action, Amkor's Board of Directors consisted of seven members: James Kim, John Kim, Winston J. Churchill, George K. Hinckley, James W. Zug, Roger A. Carolin and Constantine N. Papadakis. The named Defendants in this case include these seven directors along with numerous other current and former Amkor officers and directors.

In his Complaint, the Plaintiff asserts that, beginning in 1998, Amkor's Board of Directors approved stock option grants to Amkor executives that were improperly backdated contrary to the Company's express policies and the purpose of granting stock options in general. According to the Plaintiff, the Board then approved false and misleading financial statements that failed to properly account for the compensation paid to the Company's executives. The Plaintiff states that this illegal practice was first revealed in August of 2006 when the Company announced that it had identified several occasions on which the "measurement date used for financial accounting and reporting purposes for option awards granted to certain Amkor employees was different from the actual grant date."

In May of 2006, following a report by a financial analyst, Amkor's Board of Directors commenced a review of Amkor's historical stock option granting practices. On July 24, 2006, immediately following this initial review, the Board formed a Special Committee comprised of independent directors to conduct an investigation into Amkor's historical stock option granting practice from the time Amkor conducted its initial public offering in 1998 through the present. On July 26, 2006, the Company announced that the Special Committee's investigation had identified several occasions on which "the measurement date used for financial accounting and reporting purposes for option awards granted to certain Amkor employees was different from the actual grant date." To correct these errors, Amkor explained that it would "restate financial statements to record additional non-cash, stock-based compensation expense[s] related to these options in fiscal years 1998 through 2005 and the first quarter of 2006." The Plaintiff's Complaint states that this investigation commenced long after the backdating at Amkor had started and five months after news of backdating at numerous companies began to come to light.

On October 6, 2006, Amkor issued the financial restatement and made further announcements concerning findings from the Special Committee's review. For example, the Special Committee reported its conclusions concerning the causes of the accounting errors it had uncovered and specifically announced:

> that the evidence does not support a finding of internal manipulation of stock option grant pricing by any member of existing management. However, based on its review, the Special Committee identified evidence that supports a finding of intentional manipulation of stock option pricing with respect to the annual grants in 2001 and 2002 by a former executive and that other former executives may have been aware of, or participated in, this conduct.

The Special Committee identified other factors that it felt contributed to the accounting errors: (1) improper measurement dates for annual stock option grants; (2) modifications to stock option grants; (3) improper measurement dates for other stock option grants; and (4) stock option grants to non-employees.

- 3 -

The Board's Special Committee also issued findings concerning material weaknesses in Amkor's internal controls. Specifically, the Special Committee concluded that Amkor had failed to establish effective oversight by the Compensation Committee of the Company's activities related to the granting of stock options. Furthermore, the Special Committee concluded that the controls were not adequate to prevent or detect instances of potential misconduct by members of senior management. This control deficiency led to the following additional findings: (1) Evidence that supports a finding of intentional manipulation of stock option pricing and associated stock-based compensation by a former executive; (2) Compensation Committee procedures were inadequate; (3) Human resources personnel were inappropriately allowed to control and administer Amkor's stock option grant process without adequate input or supervision; (4) Amkor failed to recognize stock option grant practices as a significant risk and to assure that personnel understood their appropriate roles and responsibilities and the consequences of their actions; and (5) Amkor failed to assure that personnel received adequate supervision and training on how to comply with the requirements of generally accepted accounting principles applicable to stock options. On October 6, 2006, the Special Committee issued a report to the full Board of Directors and ordered immediate commencement of remediation of these material weaknesses.

In sum, the Plaintiff contends Amkor's Board caused or allowed Amkor to issue a series of earnings' releases, disseminated to the investing public and the Company's shareholders, that falsely portrayed the Company's true business prospects. These releases in turn caused the value of Amkor's shares to be artificially inflated during the years ending in 2003 and 2004. According to the Complaint, the Defendants caused or allowed Amkor to improperly prop-up its financial results by shipping its customers' inventory far in excess of the demand for its products. The Plaintiff's case rests partially upon the allegation that this purported practice had an eventual adverse impact on Amkor's future sales.

## III. LEGAL STANDARD AND ANALYSIS

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it "fails to state a claim upon which relief can be granted." The question presented by a motion to dismiss is not whether the plaintiff will prevail in an action, but whether the plaintiff is entitled to offer evidence in support of its claim. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). In reaching a conclusion on whether the plaintiff will be permitted to pursue his claims, the Court must assume that the plaintiff's allegations are true and must draw all reasonable inferences in the plaintiff's favor. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). Even if the face of the pleadings suggests that the chance of recovery is remote, the Court must allow the plaintiff to develop the case at this stage of the proceedings. *United States v. City of Redwood*, 640 F.2d 963, 966 (9th Cir. 1981).

### A. Demand Futility

Nominal Defendant Amkor moves this Court to dismiss this action for Plaintiff's failure to make a pre-litigation demand on the company's Board of Directors. Plaintiff responds that he has made a sufficient showing of demand futility under applicable law.

Under Federal Rule of Civil Procedure 23.1, shareholder derivative complaints must "allege with particularity the efforts, if any, made by the plaintiff to obtain the action the plaintiff desires from the directors [i.e., pre-suit demand] and the reasons for the plaintiff's failure to obtain the action or for not making the effort [i.e., demand futility]." This federal rule mirrors Delaware law[1] which also requires a plaintiff who wishes to proceed derivatively on behalf of a corporation to make a demand on the corporation's board of directors prior to filing a lawsuit, or to demonstrate with specificity that demand is excused. *See In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 990 (9th Cir. 1990) (*following Delaware law and*

---

[1] Because Amkor is a Delaware corporation, Delaware state law governs the issue of whether the Plaintiff is excused from making such a pre-litigation demand. *See Kamen v. Kemper Fin. Servs. Inc.*, 500 U.S. 90, 108-09 (1991)(holding demand futility be determined by law of the state of incorporation).

- 5 -

*citing Aronson v. Lewis*, 472 A.2d 805, 815 (Del. 1984).).  Rule 23.1, however, does not establish the circumstances under which demand would be futile, which are instead determined by Delaware law.   On a motion to dismiss for failure to comply with the requirements of Rule 23.1, a Delaware court limits its consideration of the facts to the particularized facts alleged in the complaint, thus the plaintiff's pleading burden is more onerous than that required to withstand and ordinary motion to dismiss. *Aronson*, 473 A.2d at 813.  Conclusory "allegations of facts or law not supported by allegations of specific fact may not be taken as true."  *Levine v. Smith*, 591 A.2d 194, 207 (Del. 1991).

In the case at hand, the Plaintiff admits that he did not make a demand on Amkor's Board of Directors prior to initiating his own lawsuit on behalf of the corporation. In order to evaluate whether said demand was futile and therefore excused, Delaware courts employ two different tests.  When the alleged wrong constitutes a business decision by the whole board of directors, a court should employ the *Aronson* test, which evaluates whether, under the particularized facts alleged, a reasonable doubt is created that: (1) the directors are disinterested and independent; or (2) the challenged transaction was otherwise the product of a valid exercise of business judgment.  *Aronson*, 473 A.2d at 812.  In contrast, when the challenged act does not constitute a business decision by the board, a court should employ the *Rales* test, which determines whether the particularized factual allegations create a reasonable doubt that, as of the time the complaint was filed, a majority of the board could have properly exercised its independent and disinterested business judgment in responding to a demand.  *Rales v. Blasband*, 634 A.2d 927, 934 (Del. 1993).

Directorial interest exists whenever divided loyalties are present, or where the director will receive a personal financial benefit from a transaction that is not equally shared by the stockholders, or when a corporate decision will have a "materially detrimental impact" on a director but not the corporation or its stockholders. *Rales,* 634 A.2d at 936.  The personal benefit must arise "from the challenged transaction."  *Id.* at 933.  Director independence exists when a director's decision is based on the "corporate merits of the subject before the

- 6 -

board" rather than on "extraneous considerations or influences." *Aronson*, 43 A.2d at 816. When lack of independence is charged, the plaintiff must show that the board is either dominated by an officer or director who is the proponent of the challenged transaction, perhaps by a close personal or familial relationship or by force of will, or the board is so under the director or officer's influence that its discretion is sterilized. *Rales*, 634 A.2d at 936; *Telxon Corp. v. Meyerson*, 802 A.2d 257, 264 (Del. 2002).

In this case, the Plaintiff argues that since he is asserting claims concerning the Board's action and inaction both the *Aronson* test (with regard to the improper approvals of backdated stock options and the dissemination of the false and misleading executive compensation reports in the Company's annual proxy statements) and the *Rales* test (with regard to the Plaintiff's remaining allegations) apply to this action.   The Plaintiff maintains that he has alleged sufficient facts under either futility theory.  To survive dismissal, the Plaintiff's Complaint must allege particularized facts showing that at least four of the seven Amkor directors, a majority of the Board, could not have responded to a demand in a disinterested and independent manner.  As will be demonstrated below, the Plaintiff fails to make any such showing with respect to the five outside directors: Hinckley, Churchill, Zug, Papadakis and Carolin, who make up the majority of the Board.  To the extent that the Plaintiff takes issue with specific transactions and the Board approval thereof, the Plaintiff must allege particularized facts to overcome the presumption that the challenged option grant transactions were the product of a valid business judgment.  The Plaintiff has also failed to meet this burden as well.

### 1. Disqualifying Interest

In pleading demand futility, the Complaint states that each of the Board's seven members face a substantial likelihood of liability on the derivative claims alleged; therefore, said directors are in no position to render a disinterested judgment as to whether Amkor should bring such claims.  Accordingly, the Plaintiff maintains that he should be excused from making a demand on the Board.

In the litigation demand context, directors have a disqualifying interest only where the complaint shows that a majority of the board faces "a substantial likelihood of director liability," not just a mere threat or possibility of liability. *Seminaris v. Landa*, 662 A.2d 1350, 1354 (Del. Ch. Ct. 1995). The mere threat of liability is insufficient to excuse demand. *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 990 (9th Cir. 1999). Furthermore, demand will be excused "only if the plaintiff's allegations show the defendant's action were so egregious that a substantial likelihood of director liability exists." *Aronson*, 473 A.2d at 815. A director is rendered interested if he will be materially affected, either to his benefit or detriment, by a decision of the board, in a manner not shared by the corporation and the stockholders.

Although the Complaint alleges a "substantial likelihood of liability" for each and all of Amkor's directors, the Court finds that it does not sufficiently plead particularized facts supporting this allegation such that this risk of liability constitutes an interestedness preventing the Directors from impartially considering a demand. This is not the rare case, envisioned by the Delaware Supreme Court in *Aronson*, where defendants' actions were so egregious that a substantial likelihood of director liability exists. 473 A.2d at 815. The Plaintiff makes conclusory allegations that the Outside Directors – Churchill, Zug, Papadakis, Hinckley and Carolin – engaged in an unspecified "wrongful course of conduct" thus face a "substantial likelihood of liability" due to their alleged failure to prevent the very improprieties that their own internal investigation uncovered. The Plaintiff merely pleads that the Outside Directors failed to inform themselves of the circumstances surrounding the challenged option grants without the support of particularized facts.

### a. Audit Committee

The Complaint alleges that Defendants Churchill, Hinkley and Zug face a substantial likelihood of director liability for breach of their fiduciary duties because they were members of the Audit Committee that participated in the preparation of earnings releases that contained false and/or misleading information. Specifically, the Complaint states these

Defendants reviewed and then failed to correct Amkor's improper earnings releases issued between October 27, 2003 and July 1, 2004 and its financial statements for the years ending in 1998-2005 and the first quarter of 2006.  As a result, the Plaintiff maintains that these Defendants face a substantial likelihood of liability for their breach of fiduciary duties and any demand upon them would have been futile.  However, such conclusory allegations are insufficient to show that these particular Directors have a disqualifying interest thereby excusing the demand requirement.

Courts have dismissed similar complaints that lacked the specificity of defendants' knowledge of accounting improprieties or the type of systematic lack of supervision that gives rise to a breach of fiduciary duty.  *See In re Sagent Tech., Inc. Derivative Litig*, 278 F. Supp. 2d 1079, 1093-04 (boiler plate allegations that audit committee failed to establish and maintain accounting controls insufficient to excuse demand); *Citron v. United Tech. Corp.*, 796 F. Supp. 649, 652 (D. Conn. 1992) (rejecting as conclusory allegation that membership on audit committee afforded opportunity to detect an correct improprieties); *see also In re Caremark Int'l Inc. Derivative Litig.*, 698 A.2d 959, 971 (Del. Ch. 1996) (holding "Only a sustained or systematic failure of the board to exercise oversight . . . will establish the lack of good faith that is a necessary condition of liability").  Furthermore, mere oversight or error in detecting accounting irregularities does not establish a substantial likelihood of the Director Defendants' liability.  *See, e.g., Guttman v. Huang*, 823 A.2d 492, 507 (Del. Ch. 2003)  (no demand futility shown because allegations did not establish that audit committee members could have been expected to discover accounting irregularities).  In addition, a Complaint cannot establish director liability by making similarly conclusory allegations that a director disseminated financial statements he knew to be false.  *Id.* at 503-07.  With the exception of Churchill, who also served on the Compensation Committee when the backdated option grants occurred, the Court finds that the Complaint does not establish a reasonable doubt that the Audit Committee Defendants are disinterested and able to impartially consider a demand.

### b. Compensation Committee

The Plaintiff also seeks to show, by virtue of their participation in the Compensation Committee, that Directors Churchill and Papadakis face a substantial likelihood of director liability thus rendering them interested and unable to properly consider a demand. The Complaint alleges that these Defendants breached their fiduciary duties because they did not act to inform themselves of the circumstances surrounding the challenged stock option grants, thereby causing or allowing the Company's insiders to obtain unreasonable and unsupported compensation via the backdating of stock option grants. Still, the Plaintiff offers no particularized facts to support the conclusion that these Defendants did not properly inform themselves. Rather, the Plaintiff points to the Board's Special Committee findings that the Compensation Committee's policies and procedures were inadequate. However, merely alleging membership on a committee found to lack adequate procedures is insufficient to establish the substantial likelihood of liability. *See, e.g., Guttman*, 823 A.2d at 503. The Plaintiff has failed to provide particularized allegations of fact detailing the precise roles the directors played as members of the compensation committee, the information that would have come to their attention in these roles, and any indication as to why they would have perceived any irregularities. *Id.* As such, demand futility has not been established based on the aforementioned allegations.

### c. James Kim

The Court concludes that the Complaint alleges with particularity facts to create a reasonable doubt as to Director James Kim's disinterest and independence. For example, the Complaint alleges that James Kim was directly interested in the February 2002 stock option grant as he received 250,000 stock options that are alleged to have been backdated. As previously noted in this opinion, a director is considered interested where he or she will receive a personal financial benefit from a transaction that is not equally shared by the stockholders. *Rales*, 634 A.2d at 936.

With the exception of James Kim, Plaintiff cannot establish a disqualifying financial interest on behalf of the other Directors. Directors are deemed interested in a challenged transaction where the director receives a personal financial benefit that is not equally shared by the stockholders. *Pogostin v. Rice*, 480 A.2d 619, 624 (Del. 1984), *overruled on other grounds by Brehm*, 746 A.2d 244; *see also In re Sagent Tech., Inc. Derivative Litigation*, 278 F. Supp. 2d at 1087. However, here none of the five Outside Directors received any of the tainted option grants, and not one of them is alleged to have sold any stock during the relevant time period.

### 2.     **Lack of Independence**

The Plaintiff also seeks to establish that demand should be excused because Amkor's Board lacked independence. In order to meet this burden, the Plaintiff must show that the directors are "beholden to [other directors] or so under their influence that their discretion would be sterilized." *Rales*, 634 A.2d at 936. Absent such allegations, directors are presumed to act independently and their decisions are presumed to be a proper exercise of their business judgment." *Odyssey Partners L.P. v. Fleming Cos.*, 735 A.2d 386, 407 (Del. Ch. 1999).

In the Complaint, the Plaintiff summarily alleges that James Kim, with the James J. Kim Family Control Group, owning forty-six percent of the Company's outstanding common stock, "completely controls and dominates the Board of the Company." A party alleging domination and control of a company's board of directors bears the burden of proving such control by showing a lack of independence on the part of a majority of the board. *Odyssey*, 735 A.2d at 407. In this case, four out of the seven members of the Amkor Board of Directors. Theoretically, a director can be controlled by another, for purposes of determining whether the director lacked the independence necessary to consider the challenged transactions objectively. A controlled director is one who is dominated by another party, whether through close personal or familial relationship or through force of will. *Telxon Corp.*, 802 A.2d at 265.

- 11 -

1    In this case, the Plaintiff has alleged that as a result of his relationship with his father,
2 James Kim, John Kim served in various capacities at Amkor between 1992 and 2005 (as an
3 employee of Amkor and Amkor's predecessor, Amkor Electronics, Inc.) including as Director
4 of Investor Relations, Director of Corporate Development and Director of Procurement
5 (where he made $120,000 per years), and became a director of the Company in 2005.  The
6 Plaintiff contends that Defendant James Kim faces serious liability in this action, as he
7 approved backdated stock option grants, personally received at least $250,000 in backdated
8 stock option grants, reaped over $38 million in proceeds from insider sales, is named in
9 numerous securities class actions stemming from the wrongdoing alleged herein and is under
10 investigation by the SEC.  Accordingly, the Plaintiff reasons that any decision by John Kim
11 to bring suit against his father would expose James Kim to enormous civil and criminal
12 liability.  In light of the close family and business relationships between John and James Kim,
13 along with the serious liability that James Kim faces, the Plaintiff pleads that John Kim is not
14 sufficiently independent to consider a demand, and any demand on him would, therefore, have
15 been futile.

16    The Court accepts the Plaintiff's assertion that there is a serious reason to doubt
17 whether John Kim could impartially consider a demand to bring suit against his father, James
18 Kim, due to the close personal and business relationship between the two.  A reasonable doubt
19 as to a director's independence may arise due to familial affinity.  *Beam ex rel. Martha*
20 *Stewart Living Omnimedia Inc. v. Stewart*, 845 A.2d 1040, 1051 (Del. 2004). Based on the
21 foregoing, the Court concludes that the Complaint does indeed allege with particularity facts
22 that establish, by virtue of his familial relationship with James Kim,  Director John Kim's
23 independence is compromised.

24    The Plaintiff also argues that other members of the Amkor Board cannot be considered
25 independent because James Kim dominates and controls the entire Board of Directors.
26 According to the Complaint, James Kim has used his positions of power at Amkor to ensure
27 that his son, John Kim, made substantial compensation and prestigious positions within the
28

company, culminating in John Kim's appointment to the Board in 2005. Furthermore, the James J. Kim Family Group beneficially owns 46% of the Amkor's outstanding common stock, can substantially control the outcome of all matters requiring stockholder approval, including elections of members of the Board, and can substantially influence matters decided upon by the Board. The Complaint also details the plethora of business relationships and business transactions between the Kim family and Amkor that allegedly demonstrate the never-ending acquiescence to the wishes of James Kim at the expense of the best interests of the Company and its shareholders. The Complaint alleges the following Kim family relationships and business transactions:

- The executive position and compensation of JooHoo Kim, brother of Defendant James Kim;

- Anam Information Technology, Inc., which provided computer hardware and software components to an Amkor subsidiary and of which JooHoo Kim is 58% owner, received 1.8 million, 1.2 million, and 2.9 million in 2005, 2004, and 2003, respectively, from their dealings with that Amkor subsidiary;

- Jesung C&M, which provides cafeteria services to an Amkor subsidiary which JooHoo Kim and family are 96% owners, received $6.5 million, $6.4 million and 5.6 million is 2005, 2004 and 2003, respectively, pursuant to an exclusive contract with that Amkor subsidiary;

- Dongon Engineering Co., Ltd., which provides construction and maintenance services to two Amkor subsidiaries and of which JooHoo Kim (and another brother of Defendant of James Kim) is a 100% owner, received $500,000, $3 million and 1.3 million in 2005, 2004 and 2003 respectively, pursuant to services provided to that Amkor subsidiary;

- Acqutek Semiconductor & Technology Company, Ltd., which provides lead frame inventory to Amkor and of which defendant James Kim is a 17.7% owner, received $11.7 million, $11.8 million, $ 11.8 million and $16.1 million in 2006, 2005, 2004 and 2003, respectively;

- Amkor leases office space in Westchester, PA from trusts related to defendant James Kim, sold 100,000,000 of its 6.25% convertible subordinated notes due 2013 in a private placement to defendant James Kim and certain Kim Family Trusts, approved by purportedly independent members of the board;

The independence test for futility necessarily focuses on whether the directors, for any substantial reason, cannot act with only the best interests of the corporation in mind. *In re Oracle Corp. Derivative Litig.*, 824 A.2d 917, 937 (Del. Ch. 2003). A critical inquiry is

- 13 -

whether the director was conflicted in his loyalties with respect to the challenged transaction.

Despite the Complaint's list of family relationships and business transactions, the Plaintiff still fails to show how these public disclosures translate into James Kim's domination over Outside Directors Zug, Hinckley, Carolin and Papadakis – a majority of Amkor's Board. Furthermore, the Plaintiff also fails to allege any facts to demonstrate how these publicly disclosed relationships render those Board members beholden to James Kim as required by law. To create a reasonable doubt about an Outside Director's independence, a plaintiff must plead facts that would support the inference that because of the nature of the relationship or additional circumstances other than the interested director's stock ownership or voting power, the non-interested director would be more willing to risk his or her reputation than risk the relationship with the interested director. *Beam*, 845 A.2d at 1052. Rather than make a general allegation of "domination and control," a Complaint must allege that the purported controlling person had "the direct or indirect unilateral power to decide whether the director continues to receive a benefit upon which the director is so dependent or is of such subjective material importance that its threatened loss might create a reason to question whether the director is able to consider the corporate merits" of the demand objectively. *Telxon*, 802 A.2d at 264. The Plaintiff has made no such showing here.

The Complaint also alleges that Director Carolin lacks sufficient independence due to his professional relationship with Director Churchill. The two Defendants have shared investments in several closely held companies, including participation as lead investors in several deals. As such, the Plaintiff maintains that Director Carolin could not have rendered a disinterested decision on whether to pursue a derivative claim against Director Churchill. However, such an allegation based on a mere outside business relationship, standing alone, fails to create a reasonable doubt as to Director Carolin's independence. *See, e.g., Beam*, 845 A.2d at 1050. Although some professional relationships may raise a reasonable doubt as to whether a director can appropriately consider demand, not all, or even most, rise to this level. *Id.* "Business dealings seldom take place between complete strangers and it would be a

- 14 -

strained and artificial rule which required a director to be unacquainted or uninvolved with fellow directors in order to be regarded as independent." *In re Oracle Sec. Litig.*, 852 F. Supp. 1437, 1442 (N.D. Cal. 1994).

The Complaint goes on to generically allege that demand would also be futile as to the whole Board as the Director Defendants, because of their inter-related business, professional and personal relationships, have developed debilitating conflicts of interest that prevent the Amkor Board members from taking the necessary and proper action on behalf of the Company. The Complaint further asserts that in making the decision to bring suit, a majority of the directors would be forced to sue themselves and persons with whom they have extensive business and personal entanglements. According to the Plaintiff, the Board members clearly would choose not to do so therefore demand should be excused.

Delaware Courts routinely reject claims that demand is excused "just because directors would have to sue 'their friends, family and business associates.'" *In re Walt Disney Co. Derivative Litig.*, 731 A.2d 342, 355 n. 18 (Del. Ch. 1998), *aff'd in part, rev'd in part on other grounds by Brehm*, 746 A.2d 244. Such bare allegations are insufficient to cast a reasonable doubt that the directors' independence is compromised due to unspecified business or personal relationships with each other. As noted by the Defendant, courts have refused to excuse the demand requirement where there are particularized allegations far more substantial than those alleged in the Plaintiff's Complaint. *Cf. Beam*, 845 A.2d at 1040.

The Plaintiff makes an equally tenuous allegation regarding Directors Churchill and Papadakis. As members of the Compensation Committee, the Complaint alleges these Defendants control the other Defendants' compensation. As such, the Plaintiff states that the remaining members would not institute an action against Churchill or Papadakis as to do so would jeopardize each director's personal financial compensation. The Court finds such allegations insufficient to excuse demand. The Plaintiff has not alleged that any of the Outside Directors derives a substantial portion of his income from his service as a director of Amkor's Board. Further, demand futility cannot be pled by merely asserting that the

- 15 -

Directors would act to preserve their current positions and compensation. *See, e.g., Grobov v. Perot*, 539 A.2d 180, 188 (Del. 1988), *overruled on other grounds by Brehm,* 746 A.2d at 244.

### 3. Business Judgment Rule

Under *Aronson,* as pointed out above, where a challenged transaction is at issue, demand is excused where the facts alleged raise a reasonable doubt that "the challenged transaction was . . . the product of a valid exercise of business judgment." 473 A.2d at 814. Under Delaware law, a corporation's directors are presumed to have "acted on an informed basis [i.e., with due care], in good faith and in the honest belief that the action taken was in the best interests of the company." *Aronson*, 473 A.2d at 812. This presumption is typically referred to as the "business judgment rule." *Id.* This presumption places on the one attacking the action of the Board, the burden of demonstrating bad faith. *Id.* Furthermore, where a majority of the board of directors are independent or outside directors receiving no income other than usual directors' fees, the presumption of good faith is heightened. *Moran v. Household Int'l, Inc.*, 409 A.2d 1059, 1074-75 (Del. Ch. 1985). If a plaintiff cannot meet his burden of producing evidence that the directors, "in reaching their challenged decision, breached any one of the triads of their fiduciary duty – good faith, loyalty or due care . . . the business judgment rule attaches to protect corporate officers and directors and the decisions they make." *Cede & Co. v. Technicolor, Inc.*, 634 A.2d 345, 361 (Del. 1993). Courts are not to second-guess those business judgments. *Id.*

Through his Complaint, the Plaintiff alleges that "[t]he Board's decision to approve the [stock] options was not the product of valid business judgment." The Plaintiff maintains that the Board was responsible for approving the challenged stock options grants and (1) had a duty to properly inform themselves of the circumstances surrounding the options before approving them and (2) to refuse to approve grants that were in violation of the Company's stock option plans and/or were not being properly recorded. Since the improper approvals of backdated stock option grants were outside the Board's authority, the Complaint alleges that

Defendants James Kim, Hinckley and Churchill are, therefore, not afforded the protections of the business judgment rule with respect to those transactions, rendering demand upon them futile.

Plaintiff's generic allegations are insufficient to overcome the presumption of the Board's compliance with the business judgment rule. Indeed, the Plaintiff has failed to allege particularized facts that the Outside Directors Hinckley, Carolin, Zug and Papadakis made any decision that fell outside the protection of the business judgment rule. In an effort to show that he has plead facts demonstrating bad faith on the part of the majority of the Board, the Plaintiff relies upon *Sanders v. Want*, 1999 WL 1044880 (Del. Ch. Nov. 10, 1999). However, the *Sanders* decision can be easily distinguished. The *Sanders'* court found that the board violated the company's shareholder-approved stock ownership and that the board's decision could not have resulted from a valid exercise of business judgment. However, in Sanders there was evidence that the board **knew** it was issuing 20.25 million shares while it was only authorized to issue six million. In contrast, the Complaint before the Court contains no facts reflecting that directors Zug, Carolin, Papadakis and Hinckley were on the Compensation Committee during the relevant time period, or that they knew that any incorrect measurement dates had been used for the challenged options.[2] Accordingly, the Plaintiff has failed to allege facts to undercut the presumption of the business judgment rule as required by *Aronson.*

### B. Section 14(a) Claim

The Plaintiff maintains that his claim pursuant to Section 14(a) of the Exchange Act does not require a demonstration of demand futility, citing *Vides v. Amelio* a district court case from the Southern District of New York. 265 F. Supp. 2d 273 (S.D.N.Y. 2003). The *Vides'*

---

[2]Although the Complaint states that Dr. Papadakis served on the Compensation Committee for the challenged February 13, 2006 options grants, the Plaintiff still fails to plead facts sufficient to overcome the presumption of the business judgment rule. The Plaintiff fails to plead facts demonstrating any impropriety concerning these grants and these grants were not part of the restatement.

- 17 -

court found that there was no demand requirement for a derivative Section 14(a) claim by looking at "Delaware law and federal policy." *Id.* at 276. However, subsequent cases from that district have disagreed with the holding and reasoning of the *Vides* case, finding instead that Second Circuit case law clearly supported the application of the demand requirement to derivative Section 14(a) claims. *See, e.g., St. Clair Shores Gen. Employees Ret. Sys. (St. Clair) v. Libeler*, 2006 WL 2849783, at *3-7 (S.D.N.Y. Oct. 4, 2006) (*citing Lewis v. Graves*, 701 F.2d 245, 247-50 (2d Cir. 1983). The parties to this case have not cited to, and the Court is not aware of, any Ninth Circuit or other binding precedent that speaks to this issue. After reviewing the cases cited by both Plaintiff and Defendants, the Court finds more persuasive those requiring a demand for derivative Section 14(a) claims for the reasons stated in *St. Clair v. Libeler*. Accordingly, a demand is required for Plaintiff's derivative Section 14(a) claim.

### C.   Standing

Federal Rule of Civil Procedure 23.1 requires that a derivative plaintiff "shall allege (1) that the plaintiff was a shareholder or member at the time of the transaction of which the plaintiff complains." The Plaintiff's Verified Third Amended Shareholder Complaint asserts that the Plaintiff is "a current holder of Amkor Technology, Inc. Common Stock and was a holder during the time period of the wrongful conduct alleged in the Complaint through the present." This general allegation is insufficient to allege contemporaneous ownership during the period in which the questioned transactions occurred. As the Ninth Circuit reasoned in *Lewis v. Chiles*, 719 F.2d 1044, 1047 (9th Cir. 1983), Rule 23.1's continuous stock ownership requirement in a derivative lawsuit "reflects a shareholder's real interest in obtaining recovery for the corporation which increases the value of his holdings." Thus, the Complaint must indicate when plaintiffs bought stock in Amkor, and must state that they have owned stock continuously since the date of the filing of the lawsuit. *In re Sagent Tech.*, 278 F. Supp. 2d at 1096. The Plaintiff does not allege any facts to show he has owned Amkor stock continuously for the past eight years. *See Kona Enters., Inc. v. Estate of Bishop*, 179 F.3d 767, 769 (9th Cir. 1999).

- 18 -

## IV. CONCLUSION

The Plaintiff has not made particularized allegations raising a reasonable doubt as to the independence and disinterestedness of a majority of Amkor's Board of Directors. The Plaintiff has likewise failed to allege particularized facts sufficient to under cut the presumption of the business judgment rule as to the specific Board actions he challenges. As such, the Plaintiff has not shown that demand in this case is excused under Rule 23.1 and other applicable law. Further, Plaintiffs have not established standing by sufficiently alleging that they owned Amkor stock during all periods relevant to the questioned transactions and during the pendency of this suit as required by Rule 23.1. For the above stated reasons, the Court orders:

Nominal Defendant Amkor Technology Inc.'s Motion to Dismiss Plaintiff's Third Amended Shareholder Derivative Complaint (Doc. 57) is GRANTED.

Individual Defendant' Motion to Dismiss Plaintiff's Third Amended Shareholder Derivative Complaint (Doc. 59 ) is DENIED as MOOT.

Motion to Strike Portions of Plaintiff's Third Amended Shareholder Derivative Complaint and Motion for a More Definite Statement (Doc. 81) is DENIED as MOOT.

DATED this 28th day of August, 2007.

Paul G. Rosenblatt
United States District Judge